UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Pierre Camy and Jolene Vos, as assignees of Edward O'Hayer and Luisa Dones,<br><br>    Plaintiffs,<br><br>    v.<br><br>Triple-S Propiedad, Inc.,<br><br>    Defendant. | Case No. 15 C 2509<br><br>Judge John Robert Blakey |

**MEMORANDUM OPINION AND ORDER**

This is an insurance coverage action. Plaintiffs, who are assignees of the insureds, originally brought this action in the Circuit Court of Cook County based on Defendant's alleged breach of an insurance contract. Plaintiffs brought three claims against the Defendant insurer: (I) declaratory judgment; (II) breach of contract; and (III) bad faith breach of contract. Defendant removed this matter on March 24, 2015 based on diversity jurisdiction. [1]. Plaintiffs now seek to remand [14] and Defendant moves to Transfer [16]. Both motions are denied for the reasons explained below.

**I.    Background**

This matter has its origin in an armed attack on a beach house in Loiza, Puerto Rico. [1-1]. Plaintiffs, Pierre Camy and his wife Jolene Vos, had rented the beach house from Edward O'Hayer and Luisa Dones for a week in January 2011.

1

[1-1] at ¶ 17.[1]  During their stay, local gang members violently attacked the beach house. *Id.* They shot and seriously injured Camy, whose severe injuries resulted in paraplegia. *Id.* at ¶ 18-19. Vos suffered extreme shock and mental anguish from the attack, in addition to loss of consortium from her husband. *Id.* at 20. Following that incident, Plaintiffs brought a tort action in Cook County Circuit Court against O'Hayer and Dones for landlord tenant liability, innkeeper liability, premises liability, negligent infliction of emotional distress and fraudulent misrepresentation. [29-6].

O'Hayer and Dones had an insurance policy (the "Policy") with the Defendant that covered personal property damage and personal liability. [29-1]. In response to Plaintiffs' tort action, O'Hayer and Dones initially retained counsel. That counsel alerted Defendant to the tort action and demanded that it provide a legal defense as required by the Policy. [1-1] at ¶ 24. Defendant refused, and denied any obligation to extend coverage under the Policy based on the "business-pursuits" exclusion. Essentially, Defendant claimed that the Policy did not require coverage for business pursuits operated by the insured or from the insured location (*i.e.*, renting the beach house). *Id.* at ¶ 26-29.

After the denial of defense, counsel withdrew. *Id.* at ¶ 32. O'Hayer and Dones could not find replacement counsel or adequately defend themselves and, as a result, the circuit court entered a $5,750,000 Default Judgment against them on January 22, 2013. *Id.* at ¶ 33-35. On October 30, 2014, O'Hayer and Dones

---

[1] Plaintiffs are citizens of Michigan, while O'Hayer and Dones are citizens of Illinois. The Defendant is a citizen of Puerto Rico [1].

2

assigned all rights and claims they had against Defendant to Plaintiffs, including those rights and claims arising under the Policy. *Id*. at ¶ 14. Based on the assignment of those rights, Plaintiffs then filed a Complaint with the Circuit Court of Cook County asserting the following causes of action against the Defendant:

- Count I: Declaratory Judgment – The attack constitutes a covered "occurrence" under the Policy triggering Defendant's duties to defend and indemnify.

- Count II: Breach of Contract/Failure to Defend – Defendant breached the Policy in four ways: (1) by refusing to defend O'Hayer and Dones; (2) by failing to defend O'Hayer and Dones under a reservation of rights; (3) by failing to conduct a proper investigation; and (4) by failing to promptly file a declaratory action to determine the existence of coverage.

- Count III: Bad Faith Breach of Contract in Violation of 215 ILCS 5/155 – Defendant's breach of its duty to provide a legal defense was vexatious and unreasonable.

## II. Motion to Remand

On March 24, 2015, Defendant removed the case from Cook County, [1], and the parties now dispute the proper location for adjudication. Plaintiffs have filed a motion to remand [14], and Defendant has requested a transfer to the District Court of Puerto Rico. [16]. The Court will address each motion in turn.

### A. Legal Standard

A case originating in state court is removable to federal court only if it could have originally been brought there. 28 U.S.C. § 1441(a). Under 28 U.S.C. § 1332, a case is properly brought before this Court sitting in diversity jurisdiction if: (1) the parties are completely diverse, and (2) the amount in controversy exceeds $75,000. Additionally, a removing defendant in a diversity case must satisfy the

requirements of 28 U.S.C. § 1441(b)(2), known as the "forum defendant rule." Under the forum defendant rule, a diversity case "shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." *Id.* Plaintiffs, relying on the "direct action" provision of 28 U.S.C. § 1332(c)(1), claim that Defendant is a citizen of Illinois and therefore this matter should be remanded pursuant to the forum defendant rule.

**B. Analysis**

Remand is inappropriate because this Court has diversity jurisdiction and the forum defendant rule does not apply. Based on the notice of removal, the parties are diverse under Section 1332. [1]. Plaintiffs do not appear to dispute this fact.[2] Instead, they argue that this matter was improperly removed under the forum defendant rule, because Defendant is an Illinois citizen under 28 U.S.C. § 1332(c)(1).

According to Section 1332(c)(1), a corporation is deemed "a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business, except that in any direct action against the insurer of a policy or contract of liability insurance . . . to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of – (A) every State and foreign state of which the insured is a citizen." Plaintiffs argue that this lawsuit is a "direct action" and therefore Defendant should

---

[2] At various points in their briefs, Plaintiffs appear to mistakenly refer to a lack of diversity jurisdiction. *See* [14] at 1. It seems, however, that their actual argument is that removal was improper under the forum defendant rule. 28 U.S.C. § 1441(b)(2). That rule is not jurisdictional, but procedural. *Hurley v. Motor Coach Indus., Inc.*, 222 F.3d 377, 380 (7th Cir. 2000). Even if Plaintiffs were to argue for a lack of diversity jurisdiction, which they do not appear to do, that argument would fail. Plaintiffs are citizens of Michigan, the Defendant is a citizen of Puerto Rico, and the amount in controversy exceeds $75,000.

4

be deemed a citizen of Illinois. If considered a citizen of Illinois, the state in which this case was originally filed, removal to federal court was improper under the forum defendant rule. This matter turns, then, on whether the present litigation is a "direct action."

While the statute and Seventh Circuit case law do not expressly address the issue, the courts in this District and throughout the nation have adopted a nearly uniform definition of "direct action." According to those courts, a direct action is where a party who suffered damage for which the insured is legally responsible brings suit against the insured's "liability insurer without joining the insured or first obtaining judgment against the legally responsible party." *Camelback Properties v. Phoenix Ins. Co.*, No. 10 C 01467, 2010 WL 2402929, at *2 (N.D. Ill. June 15, 2010). By comparison, "[a] suit by an insured against his or her own insurer is denominated a first-party action. The direct-action rule of Section 1332(c) does not apply to a first party action, whether the action is based on denial of coverage or bad-faith insurance practices." *Id.*[3]

This lawsuit is not a direct action because: (1) Plaintiffs obtained judgment against O'Hayer and Dones before filing suit against their insurer, and (2) it is a first party action between the Plaintiffs (standing in the shoes of the insureds) and the insurer.

---

[3] *See also Logan v. Associated Int'l Ins. Co.*, 131 F. Supp. 2d 986, 988 (N.D. Ill. 2001); *McKeown, Fitzgerald, Zolliner, Buck, Hutchinson & Ruttle v. Home Ins. Co.*, No. 94 C 2856, 1994 WL 323263, at *2 (N.D. Ill. June 30, 1994); *Rosa v. Allstate Ins. Co.*, 981 F.2d 669, 675 (2d Cir. 1992) (stating that the definition quoted in *Camelback* is the "prevailing rule"); *Kong v. Allied Prof'l Ins. Co.*, 750 F.3d 1295, 1300 (11th Cir. 2014); *Searles v. Cincinnati Ins. Co.*, 998 F.2d 728, 729 (9th Cir. 1993).

To the first point, Plaintiffs obtained a $5,750,000 judgment against O'Hayer and Dones on January 22, 2014, and only then sued the insurance carrier. Plaintiffs presumably chose this path because direct actions against insurers are prohibited under Illinois law. *Richardson et al. v. Econ. Fire & Cas. Co.*, 485 N.E.2d 327, 329 (Ill. 1985); *Zegar v. Sears Roebuck & Co.*, 570 N.E.2d 1176, 1177 (Ill. App. Ct. 1991). Under *Camelback*, therefore, this matter is not a direct action because Plaintiffs obtained a judgment against the "legally responsible parties," O'Hayer and Dones, before initiating the present lawsuit. *Camelback*, 2010 WL 2402929, at *2.

Second, the fact that Plaintiffs bring suit as assignees does not change the character of this litigation – it is a first party action between the insured and the insurer. In this regard, the decision in *Love v. Frontier* is particularly instructive. *Love v. Frontier*, No. 07 C 5714, at Dkt. 23 (N.D. Ill. 2007); *see also* 526 F. Supp. 2d 859 (N.D. Ill. 2007). In *Love*, the plaintiff obtained a $5.5 million judgment against a doctor in the Circuit Court of Cook County. *Love*, No. 07 C 5714, at Dkt. 13-1. The plaintiff, after obtaining an assignment from the doctor, then sued the doctor's insurance carrier for bad faith and failure to settle the underlying claim. *Id.* at Dkt. 13. The insurer removed the case to federal court, *id.* at Dkt. 1, where the plaintiff filed a motion to remand arguing that the lawsuit constituted a direct action. *Id.* at Dkt. 13. The court denied that motion, explaining that the matter was not a "direct action" but rather a first party action by an insured against the insurer. *Love*, 526 F. Supp. 2d at 860. The Court said "that Love's partial reliance

6

on her status as the doctor's assignee meant that this action was to that extent equivalent to a suit by the insured himself against the insurer – thus taking the case out of" the direct action exception. *Id*.

The same is true here. In 2011, Plaintiffs sued O'Hayer and Dones seeking recovery on various tort claims. The court in that matter awarded Plaintiffs $5.75 million, and O'Hayer and Dones then assigned their rights under the Policy to Plaintiffs. Plaintiffs, standing in the shoes of O'Hayer and Dones, sued the Defendant insurance company for various breach of contract claims under the Policy. Plaintiffs' action is thus similar to the first party action in *Love*, and is not a "direct action" as defined by case law. *Love v. Frontier*, 526 F. Supp. 2d 859 (N.D. Ill. 2007); *see also National Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 511, fn. 1 (7th Cir. 2008) ("This is a case of the insured suing the insurer and thus is not a direct action").[4] As such, Defendant is not an Illinois citizen under Section 1332(c)(1) and the maintenance of this suit in the Northern District of Illinois does not offend the forum defendant rule. This Court may properly hear the case sitting in diversity jurisdiction.

Plaintiffs' various arguments against this finding are unavailing. First, Plaintiffs' reliance on *Indiana Gas* as controlling authority is improper. *Indiana Gas Co. v. Home Ins. Co.*, 141 F.3d 314 (7th Cir. 1998). The issue there was the citizenship of members of underwriting syndicates for the purposes of diversity

---

[4] *See also Caringella v. Liberty Surplus Ins. Corp.*, No. 10-44, 2010 WL 2231825 (W.D. Mich. June 2, 2010); *R.L. Vallee, Inc. v. American Int. Specialty Lines Ins. Co.*, 431 F. Supp. 2d 428, 434 (D. Vt. 2006); *Weast v.Travelers Cas. and Surety Co.*, 7 F. Supp. 2d 1129, 1132 (D. Nev. 1998); *Lundahl v. American Bankers Ins. Co. of Florida*, 2015 WL 1786903 *2 (10th Cir. April 21, 2015).

7

jurisdiction. The Court briefly noted §1332(c)(1) only to say that the case was not a direct action, as it was a first party action. *Id.* at 317. There was no analysis or discussion of the statute, or of cases involving the statute. *Id.*

Second, Plaintiffs' citation to *Metro. Life Ins. Co. v. Estate of Cammon*, 929 F.2d 1220 (7th Cir. 1991) does not support the conclusion that direct actions include first party actions. In *Cammon*, the court held that Section 1332(c)(1) did not apply because the plaintiff was the insurer and, therefore, the case was not an action "against the insurer." *Id.* at 1223. The case did not address the purpose of the "direct action" provision or state that direct actions include first party actions. Indeed, nothing it said could be construed as supporting the idea that first party actions are direct actions.

Third, with regard to Plaintiffs' reliance upon *Hernandez v. Travelers Ins. Co.*, 489 F.2d 721 (5th Cir. 1974) and *Boston v. Titan Indemnity Co.*, 34 F. Supp. 2d 419 (N.D. Miss. 1999), the Court finds that those precedents do not directly address the issue here. They are therefore unpersuasive.

Finally, *Chavarria v. Allstate Ins. Co.*, 749 F. Supp. 220 (C.D. Cal. 1990) is likewise unavailing. Indeed, that opinion has been routinely criticized by the Ninth Circuit itself and the Northern District of Illinois, among others. *Searles v. Cincinnati Ins. Co.*, 998 F.2d 728, 729 (9th Cir. 1993) ("The Chavarria decision does not follow binding Ninth Circuit precedent and has been criticized on this basis"); *McKeown, Fitzgerald, Zolliner, Buck, Hutchinson & Ruttle v. Home Ins. Co.*, 1994 WL 323263, at *3 (N.D. Ill. June 30, 1994).

### III. Motion to Transfer

#### A. Legal Standard

Defendant seeks to transfer this case to Puerto Rico, where its headquarters are located and the underlying injury occurred. This Court may transfer a case to another jurisdiction, however, only when: (1) venue is proper in both the transferor and the transferee courts; (2) transfer is for the convenience of the parties and witnesses; and (3) transfer is in the interest of justice. 28 U.S.C. § 1404(a); *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 977-78 (7th Cir. 2010); *Sickman v. Asset Recovery Solutions, LLC*, No. 14 C 9748, 2015 WL 1911431, at *1 (N.D. Ill. Apr. 27, 2015). In this analysis, the movant must "carry the heavy burden of showing that transfer is warranted. It is not enough that the transfer merely shifts the burden from one party to the other, the transferee forum must be clearly more appropriate than the transferor forum." *Sitrick v. FreeHand Sys., Inc.*, No. 02 C 1568, 2003 WL 1581741, at *2 (N.D. Ill. Mar. 27, 2003). Defendant has not met that burden here.

#### B. Analysis

##### i. Venue

In determining whether a transfer is proper, the Court must first determine whether venue is proper in both the transferor and transferee courts. *Continental Cas. Co. v. Staffing Concepts, Inc.*, 2009 WL 3055374 * 2 (N.D. Ill. 2009). Here, the parties concede that venue is proper in both the Northern District of Illinois and the District of Puerto Rico. On its own analysis, the Court concurs. *See, e.g., Allstate*

9

*Life Ins. Co. v. Stanley W. Burns, Inc.*, No. 14-CV-7098, 2015 WL 764242, at *5 (N.D. Ill. Feb. 23, 2015).

### ii. Convenience

With respect to convenience, federal courts consider: (1) plaintiff's choice of forum; (2) the situs of material events; (3) the convenience of the parties; (4) the convenience of the witnesses; and (4) the relative ease of access to sources of proof. *Research Automation*, 626 F.3d at 978; *Staffing Concepts*, 2009 WL 3055374, at *3.

#### 1. Plaintiff's Choice of Forum

Plaintiff's choice of forum carries little weight here because they do not reside in Illinois. Plaintiffs are Michigan residents. [1-1] at ¶ 11. Since they are not residents of Illinois, the presumption of deference to Plaintiff's choice of forum in Illinois does not apply. *St. Paul Fire & Marine Ins. Co. v. Brother Int'l Corp.*, No. 05 C 5484, 2006 WL 1543275, at *2 (N.D. Ill. June 1, 2006) ("courts agree that the presumption of deference does not apply where the plaintiff does not reside in the chosen forum"). While Plaintiffs argue that "assignees of contractual rights are treated as having the same home forum as the assignor," [29] at 10, the case they cite does not support that proposition. *See Gulf Coast Bank & Trust Co. v. Home State Bank, N.A.*, 2011 WL 5374098 (N.D. Ill. Nov. 4, 2011). Plaintiffs' choice of forum is thus venue neutral.

#### 2. The Situs of Material Events

In breach of contract cases, the situs of material events "is where the business decisions causing the breach occurred." *Hyatt Corp. v. Pers. Comm'ns*

*Indus. Ass'n*, No. 04 C 4656, 2004 WL 2931288, at *3 (N.D. Ill. Dec. 15, 2004). Plaintiffs' action here is for breach of an insurance contract. The decisions that Plaintiffs allege caused the breach of contract were all made in Puerto Rico, at Defendant's offices and by Defendant's employees. [17] at 4. Thus, the situs of the material events weighs in favor of a transfer to Puerto Rico.

### 3. Convenience of the Parties

The convenience of the parties favors Illinois. "A court will not grant a motion to transfer if it will merely shift the inconvenience from one party to another," *Medi USA v. Jobst Institute, Inc.*, 791 F.Supp. 208, 211 (N.D. Ill. 1992), and courts recognize the reality that medical issues sometimes render travel particularly onerous for one party. For example, in *Wen Products, Inc. v. Master Leather, Inc.*, 899 F. Supp. 384, 386 (N.D. Ill. 1995), the court credited the Plaintiff's argument that, based on his doctor's orders, he could not travel due to heart trouble. The court said, Plaintiff "is seventy-three years, has had heart trouble for five years, and his doctor has declared that he should not take extended travel. Given this condition and the fact that . . . [defendant is] a 225 employee firm with sales territories all over the United States, the court finds that this consideration favors transfer" to Plaintiff's proposed forum. *Id.*; *see also SRAM Corp. v. SunRace Roots Enter. Co., Ltd.*, 953 F.Supp. 257, 260 (N.D. Ill. 1999). Such a holding is not rare, as courts commonly favor the forum that is most convenient for seriously injured and travel restricted parties, such as those carrying the heavy burdens of paraplegia or quadriplegia. *Aldridge v. Forest River, Inc.*, 436 F. Supp. 2d 959, 961 (N.D. Ill.

11

2006); *Lapham–Hickey Steel Corp. v. A.G. Edwards Trust Co.*, FSB, No. 03 C 3282, 2003 WL 22324877 (N.D. Ill. Oct. 8, 2003); *Valvoline Instant Oil Change Franchising, Inc. v. RFG Oil, Inc.*, No. 12-CV-39-KSF, 2012 WL 3613300, at *10 (E.D. Ky. Aug. 22, 2012) (collecting cases).

Here, it appears that the burden and additional expenses of travel would weigh much more heavily on the Plaintiffs than they would on Defendant. The Defendant is a large corporation based out of Puerto Rico that does business with individuals in the United States and issues insurance policies covering personal liability anywhere in the world. The Court has been made aware of no similar issues (*i.e.*, health restrictions) that would complicate travel by Defendant's corporate representatives. Conversely, travel would be highly onerous for Plaintiffs. Plaintiffs are a couple from Michigan, and the husband Camy's injuries have resulted in paraplegia. Travel for Mr. Camy to Puerto Rico would be both physically difficult and financially burdensome due to his immobility and the related physical problems stemming from his paraplegia. [29] at 12. It appears, then, that the inconvenience of transferring this matter to Puerto Rico would be much greater for Plaintiffs than would be the inconvenience for Defendant if the case were to remain in this Court. This factor weighs against transfer.

### 4. Convenience of the Witnesses

The Court next considers the convenience of the witnesses, which "is often viewed as the most important factor in the transfer analysis." *JDA eHealth Sys., Inc. v. Chapin Revenue Cycle Mgmt., LLC*, No. 07 C 7781, 2011 WL 2518938, at *4

(N.D. Ill. June 23, 2011). In analyzing this factor, the "convenience of party witnesses is generally given little weight," *Allstate Ins. Co. v. Regions Bank*, No. 13 C 5140, 2014 WL 440253, at *4 (N.D. Ill. Feb. 4, 2014), while the convenience of the non-party witnesses is considered "substantially more important." *Addiction & Detoxification Inst., LLC v. Rapid Drug Detox Ctr.*, No. 11-CV-7992, 2013 WL 951115, at *4 (N.D. Ill. Mar. 11, 2013). This analysis considers the number of witnesses in each forum, the nature and importance of the witnesses' testimony, expenses for each witness to travel and be absent from his or her job, and "whether the witnesses can be compelled to testify." *Event News Network, Inc. v. Thill*, 2005 WL 2978711, at *5 (N.D. Ill. Nov. 2, 2005).

The only identified non-party witnesses here, O'Hayer and Dones, live in Chicago, Illinois. Along with Defendant's employees, it is likely that O'Hayer and Dones are the most important witnesses. This case centers on the application of the Policy's business pursuits exclusion – which excludes coverage for "'bodily injury' or 'property damage' arising out of or in connection with a 'business' conducted from an 'insured location' or engaged in by an 'insured.'" [29-1] at 34. Central to that point will be testimony from O'Hayer and Dones regarding their use of the beach house and how frequently they rented it out. O'Hayer and Dones live in Chicago, they are in their seventies, and they both have serious health conditions that require ongoing medical treatment. [29-4]. According to O'Hayer, their medical conditions and the required treatment would make it difficult to travel from Chicago to Puerto Rico. *Id*. As O'Hayer and Dones are perhaps the most important non-party

witnesses, their residence in Chicago and the difficulty they would face traveling to Puerto Rico weigh heavily against a transfer.

The Court has not been made aware of any additional non-party witnesses, and the convenience of the party witnesses – as explained above – weighs in favor of Illinois. The Plaintiffs would likely have a great deal of difficulty traveling due to Plaintiff Camy's health condition, and would probably have to pay for their trips to Puerto Rico out of pocket. Regarding the three employee witnesses listed by Defendant, there is no evidence that any of them face issues that would make their travel particularly burdensome or complicated. Given the above, particularly the convenience of the non-party witnesses, this factor weighs heavily against transfer.

**5. Access to Proof**

The access to proof issue carries little weight in this Court's analysis. *Qurio Holdings, Inc. v. DIRECTV, LLC*, No. 14-CV-7502, 2015 WL 1943278, at *4 (N.D. Ill. Apr. 29, 2015). "Because documents now are easily scanned, stored, and electronically transmitted, moving them no longer creates the onerous burden it may once have imposed." *Unomedical A/S v. Smiths Med. MD, Inc.*, No. 09-CV-4375, 2010 WL 2680144, at *2 (N.D. Ill. June 30, 2010). It appears that documentary evidence will be the predominant form of proof relied upon in this matter. Particularly relevant will be the claim file held by Defendant, related correspondence amongst Defendant's employees, and assorted paperwork or correspondence in possession of the Plaintiffs. This evidence can be easily uploaded

14

and transmitted electronically, and does not appear to be especially voluminous. The Court finds that this factor is venue neutral.

### iii. Interest of Justice

The "interests of justice" element of the transfer analysis concerns the efficient administration of the court system. *Research Automation*, 626 F.3d at 978. In assessing whether transfer serves the interests of justice, the Court considers public interest factors including: the respective desirability of resolving controversies in each locale, the relationship of each community to the controversy, and each court's relative familiarity with the relevant law. *Id*. at 978.

### 1. Desirability of Resolving in Each Locale

The desirability of resolving this matter in the proposed locales is venue neutral. With regard to Illinois, the courts have noted that the state "has a strong interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state-actors." *Tranzact Techs., Inc. v. 1Source Worldsite*, No. 01 C 8508, 2002 WL 122515, at *6 (N.D. Ill. Jan. 30, 2002). Plaintiffs argue that O'Hayer and Dones were injured when Defendant refused to provide coverage and a legal defense in the Illinois state court action. Where individuals contract with an out of state company and that company is alleged to have injured those individuals in their home state, that state has a clear interest in providing a forum for its citizens to seek redress. *Id*. Otherwise, Illinois residents would incur significant hardship in protecting their rights and interests against out-of-state parties. As Plaintiffs

are standing in the shoes of O'Hayer and Dones, they are seeking to protect the rights of Illinois citizens under an insurance policy against an out-of-state company.

The case for resolution in Puerto Rico is similarly compelling. Defendant emphasizes two considerations: (1) that the insurance policy is governed by Puerto Rican law, and (2) that the case involves a property located in Puerto Rico. As to the choice of law, the record is not yet sufficiently developed – as explained below – to allow this Court to determine the applicable law. With regard to the property, it is true that the beach house at issue was in Puerto Rico and the attack occurred there.

It does not appear, however, that the Policy provided coverage for the beach house itself. Under the terms of the contract, the Policy did not provide property coverage for the dwelling or any appurtenant structures. [29-1]. Instead, the Policy covered "unscheduled personal property," additional living expense, and home assistance. *Id*. On a dollar basis, the vast majority of the coverage provided, therefore, was for personal liability and medical payments to others. This coverage, in turn, was not limited to the beach house (or even Puerto Rico), but rather applied anywhere in the world. Thus, the Policy itself does not weigh particularly heavily in favor of litigating this matter in Puerto Rico.

Nonetheless, the corporate decisions at issue did occur in Puerto Rico and this lawsuit seeks to impose liability on a Puerto Rican company. This is a compelling interest which the District Court of Puerto Rico would presumably want

to resolve. In light of the circumstances noted above, the Court finds that this factor is venue neutral.

### 2. Relationship of Each Community to the Controversy

The relationship of each community to the controversy is venue neutral as well. As to Puerto Rico, the Defendant is from there, the alleged misconduct took place there, the beach house was located there, and the policy covered some property located there. Though, as explained above, most of the coverage under the Policy was for personal liability – which applied without geographic limitation. With regard to Illinois, the insured party lives in Illinois, the decision to deny coverage affected that party in Illinois, the decision not to defend affected a case in Illinois state court, that state court issued a default judgment in Illinois and the Policy appears to cover personal injury in Illinois (and elsewhere). The Court finds that this factor balances evenly as well.

### 3. Each Court's Familiarity with the Relevant law

At this point in the proceedings, the record is not sufficiently developed to allow this Court to determine the applicable law. Under Illinois choice-of-law rules for insurance contracts, Illinois applies the law of the state with the "most significant contacts." *Perma-Pipe, Inc. v. Liberty Surplus Ins. Corp.*, 38 F. Supp. 3d 890, 894 (N.D. Ill. 2014); *G.M. Sign, Inc. v. Pennswood Partners, Inc.*, 9 N.E.3d 49, 63 (Ill. App. Ct. 2014). Among the factors a court will consider are: (1) the location of the subject matter; (2) the place of delivery of the insurance policy; (3) the domicile of the insured or of the insurer; (4) the place of the last act to give rise to a

valid insurance policy; and (5) the place of performance, or other place bearing a rational relationship to the insurance policy. *G.M. Sign, Inc.*, 9 N.E.3d at 63. At this time, the record is insufficiently developed on a number of the relevant factors. Specifically, several sections of the Policy are in Spanish and the Policy appears to be missing a number of the forms and endorsements that are listed in the schedule of forms and endorsements. [29-1]. Therefore, the Court cannot presently decide the choice of law issue, and this factor weighs as neutral.

### iv. Transfer Analysis

The Court finds that, based on the above, the transferee forum is not "clearly more appropriate" than the transferor forum. *Sitrick v. FreeHand Sys., Inc.*, No. 02 C 1568, 2003 WL 1581741, at *2 (N.D. Ill. Mar. 27, 2003). As to the convenience analysis, the Court finds that the majority of factors – including the most important factor – weigh against transfer. Regarding public interest, the factors weigh evenly. Thus, Defendant has not met its burden and the motion to transfer is denied.

## IV. Conclusion

For the reasons set forth above, the Plaintiffs' motion to remand [14] and Defendant's motion to transfer [16] are denied. The parties shall appear in court for a status hearing on 6/25/15 at 9:45 a.m. in Courtroom 1725. At that time, they shall be prepared to set a case management schedule.

IT IS SO ORDERED

Dated: June 19, 2015

_____
Judge John Robert Blakey
United States District Court